**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| FRANKLIN LORD and SHARON SCHUMANN, | : | |
| plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:08-CV-1299 (JCH) |
| v. | : | |
| | : | |
| INTERNATIONAL MARINE | : | SEPTEMBER 23, 2013 |
| INSURANCE SERVICES, et al., | : | |
| Defendants. | : | |

**RULING RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 165)**
**AND INTERNATIONAL MARINE UNDERWRITER'S CROSS-MOTION FOR**
**SUMMARY JUDGMENT (Doc. No. 167)**

## I.    INTRODUCTION

Plaintiffs Franklin Lord and Sharon Schumann (collectively, "plaintiffs")[1] bring this

action, pro se, against International Marine Underwriters ("IMU"), International Marine

Insurance Services ("IMIS"), and two IMIS agents, Alan and Gary Golden.  In the

Second Amended Complaint (Doc. No. 99), plaintiffs allege sixteen counts consisting of

four causes of action against each of the four defendants.  Those causes of action, all of

which derive from defendants' alleged failure to return plaintiffs' insurance premium,

are:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair

dealing; (3) violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.

Gen. Stat. § 42-110a et seq.; and (4) statutory theft under Conn. Gen. Stat. §§ 27-258

and 52-564.  In IMU's Answer to the Second Amended Complaint (Doc. No. 104), IMU

---

[1] Plaintiffs' counsel withdrew in 2009.  The court directed plaintiffs that, because Lord could not represent her, Schumann would have to file a separate pro se appearance in the case.  See Doc. Nos. 48, 49, 64, 123.  Her appearance was filed in November 2012.  See Doc. No. 130.  Some rulings in the interval refer to Lord as the sole plaintiff.  See, e.g., Doc. No. 124.  Given that Schumann now appears pro se in this action, the court refers to the plaintiffs collectively throughout this Ruling.

makes cross-claims against IMIS for indemnification and contribution and against plaintiffs for setoff or reduction in the amount of a prior judgment against them.

After plaintiffs moved for summary judgment on all sixteen counts, IMU filed a cross-motion seeking summary judgment as to plaintiffs' four causes of action against IMU and IMU's cross-claims for indemnification and setoff.  For the reasons stated below, the court **denies** plaintiffs' Motion for Summary Judgment (Doc. No. 165) and **grants in part and denies in part** IMU's Cross-Motion (Doc. No. 167).

## II.    STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir. 2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." Id.  In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

The moving party bears the burden of establishing the absence of genuine issues of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).  Once that initial burden is met, to defeat the motion, the party opposing summary judgment must set forth "specific facts" that demonstrate the existence of "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d

Cir. 2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor).  Unsupported allegations do not create a material factual dispute for trial. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  However, in deciding a motion for summary judgment, the court construes pro se litigants' submissions liberally, with a view to "the strongest arguments that [those submissions] suggest."  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).

## III.  BACKGROUND

### A.  Prior Litigation

Many of the underlying facts in this case were previously adjudicated in a related case.  See Commercial Union Ins. Co. v. Lord, 392 F. Supp. 2d 402, 403 (D. Conn. 2005), aff'd, 224 F. App'x 41 (2d Cir. 2007).  In 2001, plaintiffs used marine insurance broker IMIS to obtain a policy (the "Policy") from Commercial Union Insurance Company ("Commercial") to cover their vessel Wanderlust.  See Def. IMU's Local Rule ("L.R.") 56(a)(1) (Doc. No. 169) at ¶¶ 1-2; Pls.' L.R. 56(a)(1) (Doc. No. 180) at ¶¶ 1-2.  After an explosion while motorsailing in 2003, plaintiffs filed a claim for loss of the vessel.  See Def. IMU's L.R. 56(a)(1) at ¶¶ 4-5.  Commercial then brought a declaratory judgment action in this court.  Id. at ¶¶ 6, 10.  In 2005, the district court held that the Policy was void ab initio due to material misrepresentations made by plaintiffs on their insurance application.  Id. at ¶¶ 11-13.  In 2007, that ruling was affirmed by the Second Circuit, which also taxed costs against the plaintiffs, entering judgment for Commercial in the amount of $2,687.75.  Id. at ¶¶ 14-17.

In 2008, plaintiffs brought the instant action in state court, and defendants

removed it to this court.  Id. at ¶¶ 27-28.  In 2009, the court dismissed plaintiffs' claims

as time-barred and as precluded by the prior judgment.  Id. at ¶ 29.  On appeal, the

Second Circuit held that most of plaintiffs' claims were barred by collateral estoppel, but

not the claims that were premised on defendants' failure to return the Policy premium.

See Lord v. Int'l Marine Ins. Servs., 420 F. App'x 40, 41 (2d Cir. 2011).  Thereafter,

plaintiffs amended their Complaint to allege four causes of action against each of the

four defendants based on defendants' failure to refund the Policy premium.  See Def.

IMU's L.R. 56(a)(2) at ¶¶ 38-40.

B.     Material Facts[2]

As a result of the Second Circuit Ruling, this case now centers on four checks

issued over the course of the past ten years—one check issued by IMU to the plaintiffs

in June 2003; one check issued by IMU to IMIS in July 2004; and two checks issued by

IMIS to the plaintiffs, first, in March 2008 and, again, in July 2010.  In June 2003, while

Commercial's declaratory judgment action in this court was still pending, IMU issued a

check for $8,439 to plaintiffs on Commercial's behalf.  Id. at ¶ 8.  On advice of counsel,

plaintiffs did not cash the check and, instead, gave it to their attorney at the time.  Id. at

¶ 9.  Only after losing their appeal in late 2007, and learning that their attorney no longer

had the refund check, did plaintiffs request—on January 16, 2008—that IMU reissue a

refund check for the premium, along with interest through August 2007.  Id. at ¶¶ 19-21;

---

[2] Although plaintiffs filed their Motion for Summary Judgment before IMU filed its Cross-Motion,
they did not initially file a statement of material facts, as required.  See D. Conn. L. Civ. R. 56(a)(1).  IMU
cites this failure to comply with Local Rule 56(a)(1) as a reason to deny plaintiffs' Motion.  Plaintiffs,
however, subsequently filed both a Rule 56(a)(1) statement as well as a Rule 56(a)(2) statement in
response to IMU's Rule 56(a)(1) statement.  See Doc. Nos. 180 & 182. IMU has also since filed a
separate Rule 56(a)(2) statement in response to plaintiffs' Rule 56(a)(1) statement.  See Doc. Nos. 187.

see also Ex. G to Def. IMU's L.R. 56(a)(1) (Doc. No. 172-7).  IMU then determined that

it had stopped payment on the June 2003 check and, in July 2004, had issued a check

for $6,761.28 (the premium minus the broker's fee) to plaintiffs' broker IMIS.  Id. at ¶ 22.

On March 27, 2008, IMU informed plaintiffs of the fact that it had sent their refund to

IMIS and advised the plaintiffs to direct all further inquiries to IMIS.  Id. at ¶ 23.  In the

meantime, on or about March 19, 2008, IMIS issued a refund check to plaintiffs for

$8,439, which did not include the interest that plaintiffs had requested in their letter to

IMU.  Id. at ¶ 25.[3]  On July 30, 2010, IMIS issued another check for the same amount.

Id. at ¶ 32.  Plaintiffs have deposited neither of the two later checks issued by IMIS.  Id.

at ¶¶ 26, 33.

Plaintiffs do not dispute that they received each of the three refund checks—one

from IMU in June 2003, and two from IMIS in March 2008 and July 2010.  Nor do they

dispute that they declined to deposit each of these checks.[4]  The present claims hinge

principally on two additional facts alleged by plaintiffs:  (1) IMU failed to inform plaintiffs

---

[3] Plaintiffs requested the premium plus interest through August 2007 in their January 2008 letter
to IMU.  However, IMU denies—as lacking any evidentiary support—that plaintiffs requested interest on
the premium from IMIS prior to March 19, 2008, when IMIS issued the second check.  See Def. IMU's
L.R. 56(a)(2) at ¶ 24.  In their Second Amended Complaint, plaintiffs clearly indicate that Lord demanded
IMIS return the Policy premium plus interest.  See Second Am. Compl. (Doc. No. 99) at ¶ 27.  In support
of the Second Amended Complaint, and again in support of their Motion for Summary Judgment, plaintiffs
also included emails exchanged with IMIS, but none of these emails support the claim that the plaintiffs
demanded interest from IMIS.  See Ex. C to Second Am. Compl. (Doc. No. 99) at 23-25.

[4] While there are two factual issues regarding plaintiffs' decision not to deposit the check, both
are immaterial.  First, the parties dispute whether plaintiffs' decision not to deposit the checks was on
advice of counsel in all three cases.  It is undisputed that plaintiffs did not deposit the first check on the
advice of their attorney in the prior case.  Plaintiffs proceed in the present action pro se, however, and
IMU denies—as lacking evidentiary support—plaintiffs' claim that they did not deposit the later checks on
advice of counsel.  See Pls.' L.R. 56(a)(1) at ¶ 49; Def. IMU's L.R. 56(a)(2) at ¶ 49.

Second, as a purely terminological matter, plaintiffs deny that they "refused" to deposit the
checks.  See Pls.' L.R. 56(a)(2) (Doc. No. 182) at ¶ 9, 26, 33, 49, 51.  Plaintiffs concede, however, that
they did not deposit the checks.  Whether that decision is characterized as a refusal is irrelevant for
purposes of adjudicating the present claims.

that it had stopped payment on the June 2003 check and issued a check in July 2004 to

plaintiffs' broker IMIS; and (2) IMIS, including IMIS agents Alan and Gary Golden (the

"Goldens"), failed to inform plaintiffs that IMIS had received a check and failed to return

to plaintiffs the Policy premium.  See Pls.' L.R. 56(a)(1) at ¶¶ 13-14.  Neither IMU nor

IMIS disputes that they did not contact plaintiffs regarding a refund of the Policy

premium between June 2003, when IMU issued the first refund check, and January

2008, when plaintiffs requested to have the check reissued after losing their appeal and

first learning that their attorney no longer had the original refund check.  See Def. IMU's

L.R. 56(a)(2) at ¶¶ 13-14.[5]  Likewise, plaintiffs do not dispute that, roughly two months

after requesting reissuance of the refund check, they received a check from IMIS for the

Policy premium, albeit without the interest requested in plaintiffs' letter to IMU on

January 16, 2008.  See Pls.' L.R. 56(a)(2) at ¶¶ 21, 25; see also Lord Dep. at 51, Ex. B

to Def. IMU's Opp'n to Pls.' Mot. for Summ. J. (Doc. No. 172-2) at 2.

On the court's reading of the parties' Local Rule 56(a)(1) and (a)(2) statements,

the remaining factual disputes are immaterial and do not preclude the award of

summary judgment in this case.[6]

---

[5] IMU does deny the factual allegations in paragraphs 13 and 14 of plaintiffs' Rule 56(a)(1) statement, but only with respect to plaintiffs' claim that the court in the prior case ruled in Commercial's favor because IMU did not inform the court that IMU had stopped payment on the June 2003 check.  See Def. IMU's L.R. 56(a)(2) at ¶ 13.  IMU does not suggest that it otherwise informed Lord of its actions regarding the refund check prior to his request that the check be reissued.  Id.

[6] The court notes that it has searched for material factual disputes without guidance from the parties because none of the parties included in their respective Rule 56(a)(2) statements a section entitled "Disputed Issues of Material Fact," as required.  See D. Conn. L. Civ. R. 56(a)(2).  That omission may well be intentional on plaintiffs' and IMU's part, given that they both move the court for summary judgment.

While factual disagreements exist, they have no impact on this Ruling.  First, IMU denies that IMIS is its agent, rather than plaintiffs' broker.  See Def. IMU's L.R. 56(a)(2) at ¶¶ 10-11.  Plaintiffs themselves refer to IMIS as their broker and IMU's agent at different points.  See Pls.' L.R. 56(a)(1) at ¶¶

IV.    **DISCUSSION**

Plaintiffs move for summary judgment on their claims for breach of contract, bad faith, CUTPA violations, and larceny by misappropriation.  IMU cross-moves for summary judgment on plaintiffs' claims and on IMU's cross-claims against IMIS for indemnification and against plaintiffs for setoff in the amount of the prior judgment for Commercial in 2007.  In light of the three refund checks already issued to plaintiffs, plaintiffs have failed to demonstrate any deprivation with respect to their right to a refund of the Policy premium.  However, IMIS did retain plaintiffs' money for a roughly four-year period from 2004 to 2008.  For that period, plaintiffs did not possess valid tender of payment.  To compensate plaintiffs for the lost use of their money, the court awards to the plaintiffs interest for that period as damages against IMIS.  Because the court determines that IMU bears no liability, it declines to reach IMU's cross-claims.

A.    Timeliness of IMU's Cross-Motion

Before the court addresses the merits, it must address IMIS's and the plaintiffs' procedural claim that IMU's Cross-Motion—filed three weeks after the deadline for dispositive motions—was untimely.  IMIS and plaintiffs argue, on that basis, that the court should deny IMU's cross-claims for indemnification and setoff.  See Def. IMIS's

---

1, 10-12, 22.  The court views these inconsistent references by pro se plaintiffs to IMIS as their broker and as IMU's agent as imprecise usage.  There is no evidence before the court to support a claim that IMIS functioned here as IMU's agent, rather than plaintiffs' broker.

Second, the parties offer competing accounts of why IMU stopped payment on the June 2003 check.  However, regardless of whether IMU did so to recover the broker's fee, as plaintiffs allege, there is no evidence that the plaintiffs suffered a deprivation to their right to a refund of the Policy premium in consequence.  The only pertinent evidence of IMU's intent—an email from Gary to Al Golden on March 7, 2008—is consistent with both parties' accounts.  See Ex. F to Pls.' Response to IMU's Cross-Mot. (Doc. No. 180-6).

Third, the parties dispute whether IMIS initially denied any knowledge of the premium.  See Pls.' L.R. 56(a)(1) at ¶ 21.  There is no dispute, however, that IMIS issued a check to plaintiffs for the Policy premium shortly after plaintiffs' request.

Opp'n (Doc. No. 178) at 2, 17-18; Pls.' Reply to IMU's Opp'n (Doc. No. 181) at 10-11. The court observes that it cannot deny some claims in the Cross-Motion as untimely, while considering others on the merits.  The court must decide, therefore, whether to consider the Cross-Motion on the merits or to deny it as untimely and thereby construe all supporting memoranda merely as opposition to plaintiffs' Motion.

Although filed late, and without the court's permission or a showing of good cause, IMU's Cross-Motion has been fully briefed.  Hence, the court determines that it is in the interests of justice at this late stage in the litigation to consider the Cross-Motion. Moreover, building on prior judicial practice, the 2010 revisions to Rule 56 expressly authorize the court to grant summary judgment to a nonmovant after notice and a reasonable time to respond.  See Fed. R. Civ. P. 56(f); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 2013).  Not only did IMIS and plaintiffs have notice of IMU's Cross-Motion and an adequate opportunity to respond; they have, in fact, responded to the claims raised by IMU.  No factual disputes or requests for further factual development remain that prevent the court from considering plaintiffs' Motion and IMU's Cross-Motion together.  Refusing to do so on purely procedural grounds would be especially inappropriate here, where IMIS's and plaintiffs' objections pertain only to cross-claims that the court deems inessential to the resolution of the case, given the ultimate determination on the merits of plaintiffs' claims.

      B.    <u>Breach of Contract</u>

Plaintiffs allege that IMU breached its contract with them by failing to return the Policy premium after it denied and/or rescinded coverage, by failing to notify them that it had stopped payment on the June 2003 check, and by failing to notify them that it had issued a check to IMIS.  See Pls.' Mot. for Summ. J. (Doc. No. 165) at ¶ 141.  Similarly,

8

plaintiffs allege that IMIS and the Goldens breached IMIS's contract with them by failing to return the premium, by failing to notify them that IMIS had received a check from IMU, converting the funds, and by denying knowledge of the funds until presented with proof.  See id. at ¶¶ 55, 83, 112.  In its Cross-Motion, IMU alleges that it returned the premium to plaintiffs and, after they did not deposit it, to plaintiffs' broker IMIS; that subsequently IMIS has twice issued checks to plaintiffs; and that, on each of these occasions, plaintiffs have declined to deposit the refund check issued to them.  See Def. IMU's Mem. in Opp'n to Pls.' Mot. for Summ. J. ("IMU's Opp'n") (Doc. No. 168) at 9-10. With respect to the present case, the Second Circuit has held that, although plaintiffs were precluded by the prior litigation from arguing that IMU did not tender a refund, they could replead their claims based on the fact that they had not subsequently received payment of the premium from the defendants.  See Lord, 420 F. App'x at 41-42.

In light of the undisputed facts before the court, there is no basis to award summary judgment for plaintiffs on their breach of contract claim, and summary judgment for IMU is now properly granted on this claim.  By plaintiffs' own account, they received three checks (in 2003, 2008, and 2010).  The court is aware of no reason why plaintiffs cannot cash one of the later checks from IMIS and thereby enjoy a full refund of the premium.  It is true that such payment would not include interest.   But plaintiffs have pointed the court to no contractual provision entitling them to interest on the refunded amount.  In June 2003, plaintiffs had the option to deposit the refunded premium and, on advice of counsel, chose not to do so during the pendency of the prior litigation.  To be sure, had IMU notified plaintiffs that it stopped payment and issued a check to IMIS, or had IMIS issued plaintiffs a check thereafter, receipt of the premium

payment four years later may have entailed less administrative hassle.  But IMU's and IMIS's actions here did not violate any contractual duty.  It is uncontroverted that plaintiffs have received payment of the premium in the form of two subsequent checks from IMIS.  Regardless of whether plaintiffs choose to deposit these checks, they do not have any further basis for their breach-of-contract claim against IMU.

In the Motion for Summary Judgment, plaintiffs allege—as they did in the Second Amended Complaint—that defendants' acts or omissions were "egregious," and that all of the defendants "acted with evil motive and intent and malice."  See Pls.' Mot. for Summ. J. at ¶¶ 56, 84-85, 112-13,142-43.  At the motion to dismiss stage, the court took these allegations as true, drawing all reasonable inferences in the plaintiffs' favor. See Ruling Re: Motion to Dismiss (Doc. No. 124) at 2.  Even construing liberally the submissions of plaintiffs as pro se litigants, the court can no longer accept conclusory allegations.  Lacking any evidentiary support, these allegations do not create triable issues of material fact.  See Weinstock, 224 F.3d at 41.  The undisputed facts that IMU and IMIS issued checks for the premium (without interest) and that plaintiffs received these checks suffice to defeat the plaintiffs' breach of contract claim as to IMU.

C.    Bad Faith

Implied in any contract is a duty of good faith and fair dealing.  See Hoskins v. Titan Value Equities Grp., Inc., 252 Conn. 789, 793 (2000); see also Restatement (Second) of Contracts § 205 ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").  Plaintiffs allege that the defendants breached their duty of good faith and fair dealing based on the same factual allegations detailed in Section IV.A, supra.  See Pls.' Mot. for Summ. J. at ¶¶ 171, 201,

10

231, 261.  In its Cross-Motion, IMU argues that the evidence does not support plaintiffs' claim.  See IMU's Opp'n at 10-12.

For reasons similar to those already stated in Section IV.A, supra, the court likewise grants summary judgment for IMU on plaintiffs' claim of bad faith.  A prerequisite of plaintiffs' claim for breach of the duty of good faith and fair dealing is that the alleged acts or omissions by the defendants impeded plaintiffs' right to receive benefits reasonably expected under the contract.  See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004).  To support their claim of bad faith, plaintiffs must show, in addition, either that defendants engaged in intentionally deceitful or misleading conduct or that defendants neglected or refused to fulfill a contractual obligation, not because of bad judgment, negligence, or an honest mistake as to rights or duties, but because of "some interested or sinister motive."  Id.; see also Elm St. Builders, Inc. v. Enter. Park Condo. Ass'n, Inc., 63 Conn. App. 657, 668 (2001) ("[Bad faith] contemplates a state of mind affirmatively operating with furtive design or ill will.").

There is no evidence before the court, however, on which a reasonable jury could rest a finding that IMU's actions hindered the receipt of benefits reasonably expected under the contract.  Plaintiffs do not dispute that they did not request reissuance of the refund check until January 2008.  Nor do they dispute that, approximately two months after their request, IMIS issued another refund check.  Despite the late stage of this litigation, and despite the unavailability of further discovery, plaintiffs have yet to offer evidence of bad faith rather than conclusory allegations of it.

There is no question that IMU did not help matters by failing to notify plaintiffs that it had stopped payment on the June 2003 check and subsequently issued payment of the refund to IMIS.  By the time plaintiffs sought to have the refund check reissued, however, they had already received payment once and chose not to deposit that payment check during the pendency of the prior litigation.  Plaintiffs do not argue, nor is there evidence upon which a reasonable jury could find, that IMU acted with the intent to deprive the plaintiffs of the refunded premium.  On the contrary, the fact that, after more than four intervening years, plaintiffs were able to receive a check from IMIS only two months after their request is inconsistent with a plot to defraud plaintiffs of their refund.  Even if IMU's conduct was, as plaintiffs allege, intended to avoid disputes with IMIS about repayment of the broker's fee, there is no basis on which a reasonable jury could infer either that plaintiffs' right to the premium was ultimately impaired, or that any impairment was due to intentional wrongdoing, rather than bad judgment or honest mistake as to rights and duties.

The court thus grants IMU's Cross-Motion for Summary Judgment on plaintiffs' claim of bad faith and, on the same ground, denies summary judgment for the plaintiffs on this claim as to IMIS and the Goldens.  In an ideal world, IMU's payment to IMIS would have prompted IMIS to issue a check to plaintiffs.  That the prior case and this one together cover a decade of litigation implies conduct that has been less than ideal on many fronts.  After ample opportunity for discovery, however, plaintiffs have failed to come forward with evidence upon which a reasonable jury could find that they proved their claims of bad faith against any of the defendants.

D.    CUTPA Violations

CUTPA provides, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. State. § 42-110b(a).  Plaintiffs claim that the course of conduct outlined in Section IV.A, supra, constituted a violation of CUTPA.  See Pls.' Mot. for Summ. J. at ¶¶ 291, 321, 351, 381.  IMU claims that it returned the premium to plaintiffs and, therefore, did not violate CUTPA. See IMU's Opp'n at 13-14.

In determining whether conduct constitutes a CUTPA violation, courts consider: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)."  De La Concha, 269 Conn. 424, 433-34 (2004).  To prevail on a CUTPA claim based on alleged deception, a plaintiff must prove three elements:  "First, there must be a representation, omission, or other practice likely to mislead consumers.  Second, the consumers must interpret the message reasonably under the circumstances.  Third, the misleading representation, omission, or practice must be material—that is, likely to affect consumer decisions or conduct."  Caldor, Inc. v. Heslin, 215 Conn. 590, 597 (1990).

Based on the undisputed facts in this case, IMU's conduct was not deceptive or unfair as a matter of law.  IMU issued plaintiffs a check in June 2003, which they chose not to deposit while the prior suit was pending.  However imprudent, IMU's lack of notice to the plaintiffs regarding the stopped payment and the subsequent payment to IMIS did

13

not by itself amount to misleading behavior, and plaintiffs have supplied no basis on which a reasonable jury could find deception.  The two uncontroverted facts are:  (1) by the time plaintiffs requested that IMU reissue the refund, the original check was four years old; and (2) within approximately two months of receiving plaintiffs' request, IMIS issued a replacement check.  Nothing in this course of conduct would support a jury finding that IMU misled plaintiffs or that its actions even affected plaintiffs' decisions.

       E.      <u>Larceny by Misappropriation</u>

Section 52-562 of Connecticut General Statutes provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."  Conn. Gen. Stat. § 52-564.  Plaintiffs allege that IMU had no right to stop payment on the check or to send the money to IMIS, and that in doing so IMU committed "larceny by misappropriation" in violation of section 52-562.  <u>See</u> Pls.' Mot. for Summ. J. at ¶¶ 410-11.  Plaintiffs allege that IMIS and the Goldens likewise committed "larceny by misappropriation" by retaining the money and failing to notify plaintiffs.  <u>See</u> <u>id.</u> at ¶¶ 415-16, 446-47, 477-78.  IMU alleges that it refunded the premium and, therefore, cannot be liable for "larceny by misappropriation," as a matter of law.  <u>See</u> IMU's Opp'n at 13-14.

Statutory theft under section 52-564 is synonymous with larceny under section 53a-119 of Connecticut General Statutes.  <u>See</u> <u>Mystic Color Lab, Inc. v. Auctions Worldwide, LLC</u>, 284 Conn. 408, 419 n.14 (2007).  Larceny requires "the intent to deprive another of property or to appropriate the same to himself or a third person." Conn. Gen. Stat. § 53a-119.  Statutory theft is thus distinct from conversion in requiring proof of intent, in addition to proof of harm from the unauthorized exercise of control or

assumption of ownership over the rightful owner's property.  See Mystic Color Lab, 284 Conn. at 418-19; Suarez-Negrete v. Trotta, 47 Conn. App. 517, 521 (1998).

Because no reasonable jury—based on the record before the court—could find the requisite intent on IMU's part, the court grants summary judgment to IMU on plaintiffs' claim of "larceny by misappropriation."  Despite ample time and opportunity, plaintiffs have not presented any evidence of malice or evil intent.  Indeed, the conclusory allegations in plaintiffs' Motion for Summary Judgment, which are taken from the Second Amended Complaint, remain unsubstantiated by the record.  IMU returned the premium to plaintiffs in June 2003, and plaintiffs chose at that time not to deposit it.  Based on the undisputed facts before the court, neither IMU's nor IMIS's subsequent conduct gives rise to a claim of statutory theft.  Plaintiffs retain their right to a refund.  Plaintiffs, however, chose not to exercise this right until the prior litigation concluded.  The fact that plaintiffs continue not to deposit the checks issued to them in 2008 and 2010 does not transform defendants' conduct into statutory theft.

F.    Interest

Section 37-3a of the Connecticut General Statutes permits the court to award prejudgment interest at a rate of ten percent (10%) per year in a civil action as "damages for the detention of money after it becomes payable."  Conn. Gen. Stat. § 37-3a(a).  Under well-settled Connecticut Supreme Court precedent, "the determination of whether interest is a proper element of damages is to be made in view of the demands of justice, not through the application of any arbitrary rules."  Scribner v. O'Brien, Inc., 169 Conn. 389, 405-06 (1975).  "[T]he allowance of interest is primarily an equitable determination to be made within the discretion of the trial court."  Id. at 406; see also Chapman Lumber, Inc. v. Tager, 288 Conn. 69, 99 (2008) ("The decision of whether to

grant interest under § 37–3a is primarily an equitable determination and a matter lying within the discretion of the trial court." (citation and internal quotation marks omitted)).

Although the court denies summary judgment for the plaintiffs on their claims for breach of contract, bad faith, CUTPA violations, and statutory theft, there is no question that money owed to the plaintiffs—in the form of a refund of the Policy premium—was not in their possession for part of the relevant period due to the cancellation of the June 2003 check.  In particular, IMIS, rather than the plaintiffs, retained the premium from late July 2004, when IMU issued a check to IMIS for the premium minus the broker's fee, and mid-March 2008, when IMIS first issued a check to the plaintiffs.

It is true that plaintiffs did not request that IMU reissue the refund check until January 2008, after the conclusion of the prior litigation.  That fact, however, does not make it lawful for IMIS to retain plaintiffs' money for almost four years.  Nor does the fact that plaintiffs have put forward no evidence to support a finding of bad faith render it improper to award interest to the plaintiffs for the unlawful detention of their money under section 37-3a.  See Sosin v. Sosin, 300 Conn. 205, 231 (2011).  Under Sosin, such an award is within the equitable powers of the court so long as money payable to the plaintiffs in an amount not in dispute was in the defendants' undisputed control.  See id. at 235.  The primary purpose of section 37-3a is not to punish those who detain money owed to others, but to compensate parties that have been deprived of the use of their money.  See id. at 230.

Based on the record before the court, plaintiffs are inarguably due a refund of the Policy premium, which refund IMU and IMIS have sought to effectuate by their refund checks in 2003, 2008, and 2010.  Plaintiffs' decision not to deposit these checks in no

16

way eliminated plaintiffs' entitlement to a refund; it did, however, bar any claim to accrued interest for the periods during which tender of payment was valid.  See State v. Lex Associates, 248 Conn. 612, 629 (1999) ("Refusal of a tender of payment, however, while it does not discharge a debt, discharges any further accrual of interest if the purchaser keeps the tender good pendente lite.").

The unusual circumstance here is that IMU canceled the June 2003 refund check, while the prior litigation was still pending, and paid the plaintiffs' broker IMIS. According to the posting date, IMIS deposited IMU's check on August 10, 2004.  See Pls.' Ex. G (Doc. No. 180-7).  At that point, IMIS was responsible for tendering payment to the plaintiffs and, by failing to do so, wrongfully retained the Policy premium that was at that time payable to the plaintiffs.   Given that the amount outstanding and IMIS's control of that amount are uncontroverted, justice demands compensation be paid to the plaintiffs for the lost use of their money.  See Solar Kinetics Corp. v. Joseph T. Ryerson & Son, Inc., 488 F. Supp. 1237, 1250 (D. Conn. 1980).

Hence, the court determines that plaintiffs should have received not only $8,439 for payment of the Policy premium—which payment plaintiffs did, in fact, receive in the form of three checks in 2003, 2008, and 2010—but also damages from IMIS in the amount of $3,045, which sum reflects interest at the statutory rate from August 10, 2004 (the posting date of IMU's check to IMIS) to March 19, 2008 (the date of IMIS's first refund check to the plaintiffs).  With respect to all other relevant periods of time, the plaintiffs were in possession of valid tender of the refunded premium, and therefore no interest may be awarded on the premium amount for those periods.  There is no evidence before the court that either IMU or IMIS conditioned payment on the release of

17

plaintiffs' claim, or that the tender of payment was invalid for any part of those periods. As pertains to IMU, the court determines that no award of interest is proper because the record before the court does not support IMU's control over the premium for any substantial period of time.

However, because IMIS paid no interest on the premium when it issued a refund check to the plaintiffs in March 2008, the court determines that plaintiffs are entitled to damages against IMIS in the further amount of $1,680, which sum reflects simple interest on the $3,045 at the statutory rate from March 19, 2008 to the date of this Ruling.   Plaintiffs are therefore due damages totaling $4,725, in addition to payment of the refunded premium, which payment IMIS has previously tendered.[7]

G.    IMU's Cross-Claims

The court has already determined in Sections IV.B-E, supra, that IMU is entitled to summary judgment as to all of plaintiffs' claims.  Because IMU bears no liability in the present case, the court denies, as moot, IMU's Cross-Motion for Summary Judgment on its counter-claims against IMIS for indemnification and against the plaintiffs for setoff.

V.    CONCLUSION

For the reasons stated above, plaintiffs' Motion for Summary Judgment (Doc. No. 165) is **DENIED**.  Defendant IMU's Cross-Motion for Summary Judgment (Doc. No. 167) is **GRANTED in part** and **DENIED in part** as follows.   The court **grants** summary judgment for IMU on plaintiffs' four claims and **denies, as moot,** summary judgment on IMU's cross-claims for indemnification and setoff.

---

[7] In the court's view, the 2008 and 2010 checks represent valid tender.  However, to the extent that a bank may not honor a check three years old, plaintiffs do not lose their entitlement to a refund of the Policy premium, and the court assumes that, in that case, IMIS would reissue a check at plaintiffs' request, as it did on the two prior occasions.

In light of the extended period of IMIS's wrongful detention of plaintiffs' premium, the court awards $4,725 to the plaintiffs in damages against IMIS, which total includes $3,045 in interest on the premium from August 10, 2004 to March 19, 2008, and $1,680 in interest on the $3,045 sum from March 18, 2008 until today.

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of September, 2013.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge
